# EXHIBIT A

ELECTRONICALLY FILED
11/17/2025 12:16 PM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 25-2-11519-31

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF SNOHOMISH

| | |
|---|---|
| MELISSA WOYTKO, individually and on behalf of all others similarly situated, | No. 25-2-11519-31 |
| Plaintiff, | SUMMONS |
| vs. | |
| FABFITFUN, INC., | |
| Defendants. | |

STATE OF WASHINGTON TO: THE ABOVE-NAMED DEFENDANTS

A lawsuit has been started against you in the above Court by Melissa Woytko, the Plaintiff. The Plaintiff's claims are stated in the written Complaint, a copy of which is served upon you with this Summons.

In order to defend against this lawsuit, you must respond to the Complaint by stating your defense in writing, and serve a copy upon the person signing this Summons within sixty **(60)** days after the service of this Summons, excluding day of service, or a default judgment may be entered against you without notice. A default judgment is one where the plaintiffs are entitled to the relief request in the Complaint because you have not responded. If you serve a Notice of Appearance on the undersigned attorney, you are entitled to notice before a default judgment may be entered.

SUMMONS - 1

CARSON|NOEL
PLLC
20 Sixth Ave NE, Issaquah, WA 98027
P. 425.837.4717   |   F. 425.837.5396

Any response or notice of appearance which you serve on any party to this lawsuit must also be filed by you with the court within 60 days after the service of summons, excluding the day of service.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to RCW 4.28.080.

DATED this 17th day of November 2025.

Respectfully submitted,

**CARSON NOEL PLLC**

By:    /s/ Wright A. Noel

Wright A. Noel (State Bar No. 25264)
20 Sixth Avenue NE
Issaquah, WA 98027
Telephone: (425) 837-4717
Facsimile: (425) 837-5396
Email: wright@carsonnoel.com

**BURSOR & FISHER, P.A.**

L. Timothy Fisher (*pro hac vice forthcoming*)
Julia K. Venditti (*pro hac vice forthcoming*)
Joshua B. Glatt (*pro hac vice forthcoming*)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        jvenditti@bursor.com
        jglatt@bursosr.com

*Attorneys for Plaintiff and the Putative Class*

SUMMONS - 2

CARSON|NOEL
PLLC
20 Sixth Ave NE, Issaquah, WA 98027
P. 425.837.4717   |   F. 425.837.5396

ELECTRONICALLY FILED
11/17/2025 12:16 PM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 25-2-11519-31

1
2
3
4
5
6
7

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF SNOHOMISH

8

MELISSA WOYTKO, individually and on
behalf of all others similarly situated,

9

Plaintiff,

10

v.

11

FABFITFUN, INC.,

12

Defendant.

Case No.: 25-2-11519-31

**CLASS ACTION COMPLAINT FOR
VIOLATION OF THE CONSUMER
PROTECTION ACT, RCW 19.86, AND
THE COMMERCIAL ELECTRONIC
MAIL ACT, RCW 19.190**

**JURY TRIAL DEMANDED**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Melissa Woytko (collectively, "Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant FabFitFun, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.    Plaintiff brings this putative class action lawsuit against Defendant on behalf of herself and all others similarly situated who have received repeated marketing e-mails from Defendant containing deceptive subject lines, in violation of Washington law.

2.    Defendant offers the FabFitFun Box, a membership program for, *inter alia*, seasonal mail-order "grab bag" style boxes containing full-sized products across beauty, fashion, fitness, wellness, home, and tech. Defendant is also responsible for the promotion, advertisement, marketing, and/or sale of the FabFitFun membership program. Defendant owns and operates the FabFitFun website at https://www.fabfitfun.com (the "FabFitFun Website") and its mobile applications (the "FabFitFun Apps") (together with the FabFitFun Website, the "FabFitFun Platform"), through which Defendant markets and sells the FabFitFun memberships. Additionally, Defendant engages in e-mail marketing campaigns, which Defendant uses to deliver thousands of e-mail advertisements daily to current subscribers.

3.    Defendant sends, and consumers receive, each day, thousands of commercial e-mail advertisements to consumers in Washington state. Many, if not most, of Defendant's e-mail advertisements contain deceptive content with deceptive "Subject" lines, promoting an "Exclusive Offer: Claim Your FREE Gift Today!," "Get Your 2nd Winter Box FREE (up to $350 value)!," and "Ignite your FabFitFun excitement with a FREE $300 Gift Bundle." Despite its repeated promises of free gifts, in the fine print of these "free offers," Defendant requires consumers make a purchase or sign up for an extended FabFitFun subscription to get the purportedly "free" products.

4.    By sending these commercial e-mails that purport to contain "free" offers— provided the recipient *first pay* for a subscription or product—Defendant violates Washington's prohibition on sending commercial e-mail messages that "contain[] false or misleading information

in the subject line." RCW § 19.190.020(1)(b). Defendant's free-if-paid-for marketing scheme is hardly free at all.

5.    For the foregoing reasons, Plaintiff brings this action individually and on behalf of all similarly situated individuals in Washington state, for violations of Washington's Commercial Electronic Mail Act, RCW 19.190, *et seq.*, and Washington's Consumer Protection Act, RCW § 19.86, *et seq.*

## THE PARTIES

6.    Plaintiff Melissa Woytko is a citizen of Washington, residing in Everett. Defendant has sent Plaintiff numerous marketing e-mails with deceptive subject lines offering "free" items and gifts, when in fact Defendant requires that consumers pay a fee to sign up for a paid FabFitFun subscription, purchase a product, or participate in other promotional offers to get the purportedly "free" items. Defendant sent those e-mails to Plaintiff while she resided in Everett, Washington.

7.    Defendant FabFitFun, Inc. is a Delaware corporation with its principal place of business in Los Angeles, California. Upon information and belief, at all times relevant to this action, Defendant has disseminated its marketing e-mails to consumers in Washington.

## JURISTICTION AND VENUE

8.    This Court has subject matter jurisdiction over this civil action pursuant to, without limitation, Section 6 of Article IV of the Washington State Constitution (Superior Court jurisdiction, generally), RCW 19.86.090 (Superior Court jurisdiction over Consumer Protection Act claims) and RCW 19.190.090 (Superior Court jurisdiction over Commercial Electronic Mail Act claims).

9.    This Court has general personal jurisdiction over Defendant under RCW 4.28.185. This Court may exercise personal jurisdiction over the out-of-state Defendant because the claims alleged in this civil action arose from, without limitation, Defendant's purposeful transmission of e-mail messages intended to solicited business to consumers within the State of Washington, thereby transacting business within this state. In addition, Defendant intended, knew, or is chargeable with the knowledge that its out-of-state actions would have consequences within Washington.

10.     Venue is proper in this District because Defendant transactions business in this District by sending the marketing e-mails with deceptive subject lines to residents of Snohomish County, including Plaintiff.

## FACTUAL ALLEGATIONS

**I.     DEFENDANT INITIATES THE TRANSMISSION OF COMMERICAL E-MAILS WITH MISLEADING SUBJECT LINES**

**A.     Defendant's Marketing Practices**

11.     Defendant is one of the largest direct-to-consumer retailers in the United States. Defendant sells subscriptions to seasonal, curated boxes containing cosmetics, clothing, wellness, and home products. FabFitFun was founded in 2010[1] and, as of 2021, claims to have 2,000,000 paid subscribers.[2] Consumers are also able to purchase individual items from Defendant through the FabFitFun Platform, at either a discounted member price or the full retail price.[3] Defendant does not operate a brick-and-mortar store; its interactions with consumers occur entirely online.

12.     Unfortunately for consumers, Defendant is a major contributor of spam e-mails filling consumers' inboxes. In fact, hordes of consumers who previously used Defendant's service have complained of repeated unsolicited marketing emails *after* they affirmatively unsubscribed from future communications with the company.[4]

13.     Likewise, consumers have reported being bombarded by automatically generated response e-mails to inquiries they never made from Defendant.[5] These complaints indicate that the

---

[1] *See* FabFitFun, *About Us*, https://fabfitfun.com/about-us/.

[2] *See* Forbes, *With 2 Million Captive Shoppers, FabFitFun Sets Its Sights On A Future In E-Commerce* (Apr. 13, 2021), https://www.forbes.com/sites/margheritabeale/2021/04/13/with-2-million-captive-shoppers-fabfitfun-sets-its-sights-on-a-future-in-e-commerce/ ("[FabFitFun has] more than 2 million members paying $50 a box per quarter (or $180 pre-paid for all four boxes in a year), to get $300 to $400 worth of full-sized products from over 1,000 different brands, from ModCloth to MAC Cosmetics to Vince Camuto, shipped to their door.").

[3] *See id.* ("Most of the company's sales come from those recurring subscriptions, but it also generates revenue from running sponsored content on its website and purchases that subscribers make online.").

[4] *See, e.g.*, Reddit, *Have Been Unsubscribed For Years* (posted Dec. 5, 2023), *available at* https://www.reddit.com/r/FabFitFun/comments/18bwbzc/have_been_unsubscribed_for_years/.

[5] *See, e.g.*, Reddit, *I Didn't Email Them...* (posted Nov. 8, 2021), *available at* https://www.reddit.com/r/FabFitFun/comments/qpv5zc/i_didnt_email_them/.

---

company pays little attention to whether consumers have given, continue to give, and have revoked, consent to receiving FabFitFun's barrage of marketing e-mails.

14.     The e-mails constitute commercial messages.  Each e-mail contains a subject line urging Plaintiff and similarly situated consumers to enroll in a paid subscription or to purchase a new box or offer consumers a percentage discount on Defendant's products and services to receiving the "free" gift.  In other words, each e-mail message offers a "free" gift so long as Plaintiff pays for some other aspect of Defendant's services.  This is hardly free.

### B.     Defendant's E-Mail Subject Lines Misleadingly Promote "Free" Gifts

15.     Defendant sends, from its principal place of business and corporate headquarters located in California, to Washington Class Members, numerous advertisement e-mails containing subject lines that are written to grab the recipient's attention through offers of "free" goods and "gifts."  Defendant sends these commercial e-mails to consumers throughout Washington.

16.     The subject lines of Defendant's "free gift" e-mails do not state or hint at the existence of any conditions or prerequisites that must be satisfied or actions that must be taken before the recipient is able to claim these free gifts.  In fact, based on the broad and unequivocal language of the subject lines, reasonable consumers would—and Plaintiff here did—believe that no such conditions or prerequisites exist.  However, the catch is buried in the body of the e-mails, which, in all cases, explains that the recipient must spend money on the FabFitFun platform or commit to spending money at a defined future time by entering into a subscription contract in order to claim the purportedly "free" gift.

17.     For example, on November 8, 2024, Defendant sent an e-mail to Class Members with the subject line, "Don't Wait! Get a FREE 2nd Winter Box Before It's Gone!"

18.     But when a Class Member who received that e-mail (and similar ones), opened the email to claim their purportedly "FREE" second box, the body of the e-mail informs them that the offer is valid if they "sign up as an Annual Member" with a specific code:



19.      Even worse, it is not until the recipient scrolls to the very bottom of the e-mail—

well past the initial offer—that the true terms are explained, in small gray font buried in fine print:

> *Offer only valid for members who **sign up** into an **Annual** Membership using code **CHEER**. Offer valid until supplies last. Cannot be combined with other offers or gift cards. You will be charged $219.99 for your first four boxes and enrolled in an Annual Membership for $219.99/year thereafter. All prices in USD. Taxes and shipping fees are not included in the price. Foreign exchange or transaction fees may apply. Cancel anytime before your next bill date.*

20.     This critical caveat, which is only visible after the user has scrolled to the very bottom of the e-mail, clarifies that the offer of a *"free"* gift is only available to those who *pay* $219.99 for an annual membership to FabFitFun. Thus, there is nothing free about this offer.

21.     This email is like the numerous e-mails that Plaintiff has received from Defendant in the last few years. For example, on October 22, 2025, Plaintiff received an e-mail with the subject line: "Last Call For A FREE Fall Box!"

> **From:** FabFitFun <vip@mail.fabfitfun.com>
> **Date:** October 22, 2025 at 12:16:09 PM PDT
> **To:** ▮▮▮▮▮▮▮▮▮▮▮▮.com>
> **Subject:** Last Call For A FREE Fall Box!
> **Reply-To:** vip@fabfitfun.com

22.     But it was not until Plaintiff opened the e-mail and scrolled past the prominent reiteration of the misleading subject line in the body of the email:



**FABFITFUN**

REJOIN TODAY AS AN ANNUAL MEMBER TO GET A FREE BOX.

LAST DAY TO GET

A Free Fall Bonus Box
*(Up To $600 In Value)*

This is it, the last day to rejoin as an Annual Member
& claim your Fall Box BOGO offer. You'll get:

23.     That the critical disclaimer appears:

> *Your first Fall Box must be customized within one hour of reactivation or FabFitFun will select your products for you. Your second Fall Box is not customizable.*
>
> *Products shown are representative of what may be in your Fall Boxes. Actual products will vary.*
>
> *Offer only valid for members who reactivate their Annual Membership using code HELLOBOGO. Offer valid until supplies last. Cannot be combined with other offers or gift cards. You will be charged $259.96 for your first four boxes and enrolled in an Annual Membership for $259.96/year thereafter. All prices in USD. Taxes and shipping fees are not included in the price. Foreign exchange or transaction fees may apply. You may cancel your subscription at any time before your next bill date online or by contacting FabFitFun Support here.*

24.     And like several of the e-mails that Defendant sent to Plaintiff and other consumers, that e-mail contained language in the subject line designed to create a false sense of urgency. This is intended to prompt the recipient to take *immediate* action to claim the "free" offer.

25.     Indeed, although Defendant's October 22 e-mail claimed *that* e-mail was her "last call" to get a free box, on October 15, 2025, a week earlier, she got the *same* e-mail urgently warning that *this* one was her last call.

> From: FabFitFun <vip@mail.fabfitfun.com>
> Date: October 15, 2025 at 1:03:37 PM PDT
> To: [redacted]com>
> Subject: Last Call For A FREE Fall Box!
> Reply-To: vip@fabfitfun.com

26.     Defendant's use of misleading subject lines is deliberate. The subject lines act as a form of "clickbait."[6] Indeed, because Defendant is selling its products and services through e-mail marketing, Defendant has an incentive to create e-mail subject lines that will get the recipient's attention and cause them to open the e-mail. As the marketing firm Litmus has explained, "the

---

[6] According to the Merriam-Webster Dictionary, "Clickbait" refers to "something (such as a headline) designed to make readers want to click on a hyperlink especially when the link leads to content of dubious value or interest." Merriam-Webster Dictionary, "Clickbait," https://www.merriam-webster.com/dictionary/clickbait; *see also* BBC, *Clickbait: The changing face of online journalism* (Sep. 14, 2015), https://www.bbc.com/news/uk-wales-34213693 ("[Clickbait] is a headline which tempts the reader to click on the link to the story. But the name is used pejoratively to describe headlines which are sensationalized, turn out to be adverts or are simply misleading."). Similarly, in this case, Defendant's "free gift" subject line text is clickbait because it is misleadingly phrased to encourage recipients to open Defendant's e-mail advertisements and, ultimately, trick them into spending money on the FabFitFun Platform.

subject line is one of the first points of contact with [a company's] subscribers.  If it doesn't catch your subscribers' attention, then the chances of them opening your campaign are slim."[7]

27.    "With subject lines playing such a crucial role for the success of each email, it's no surprise that email marketers put significant time and effort into crafting the perfect subject line."[8] And since "79% of marketers say they regularly A/B test their subject lines,"[9] it is likely that Defendant was aware of what subject lines would grab their recipient's attention.

28.    Indeed, a dynamic analysis commissioned by Plaintiff's Counsel of Defendant's e-mails show that Defendant attaches numerous trackers to the e-mails, including trackers that capture when the user opens the e-mail.  Accordingly, it is likely Defendant's express goal is to draft e-mail subject lines to capture the recipient's attention to get them to open the e-mail. Defendant adds technology in the form of trackers to learn which subject heads are, in fact, causing recipients to open Defendant's e-mails.

29.    Simply put by a trade representative, "if a subject line says the subscriber has won a prize that doesn't exist or teases a sale that simply isn't there, it's easy to tell that this subject line is misleading."[10]  That is precisely what Defendant's subject lines do.

30.    In sum, Defendant's conduct was, and continues to be, pervasive and routine.  In every e-mail with a "free" offer subject line from Defendant to Plaintiff, Plaintiff could only receive the "free" gift once they purchased a subscription.  Thus, the offer could hardly be described as free.  Furthermore, on information and belief, Defendant transmitted or caused the transmission of the commercial e-mail advertisements at issue to residents, like Plaintiff, in Washington.

---

[7] Litmus, *Re: Misleading Subject Lines* (Sep. 26, 2019), *available at* https://www.litmus.com/blog/misleading-subject-lines.
[8] *Id.*
[9] *Id.*
[10] *Id.*

## II.    CEMA AND WCPA PROHIBIT SENDING COMMERICAL E-MAILS WITH MISLEADING SUBJECT LINES

31.    Washington's Commercial Electronic Mail Act (CEMA) regulates deceptive email marketing.

32.    "CEMA was enacted to protect concrete interests in being free from deceptive commercial e-mails.  CEMA's prohibition on sending commercial e-mails with false or misleading subject lines . . . creates a substantive right to be free from deceptive commercial emails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D. Wash. 2019 Nov. 27, 2019) (holding that the plaintiff sufficiently pleaded concrete injury-in-fact for alleged CEMA violations based on her receipt of marketing emails from the defendant containing allegedly false "xx% off" statements in the subject line).  Washington courts have held that "[t]he harms resulting from deceptive commercial e-mails resemble the type of harms remedied by nuisance or fraud actions." *Id.* at 1008.

33.    An injury occurs anytime a commercial e-mail is transmitted that contains false or misleading information in the subject line. *Id.* at 1011.  Under CEMA, it is irrelevant whether misleading commercial e-mails were solicited. *Id.*

34.    CEMA creates an independent but limited private of right of action which can be asserted by a person who is the recipient of a commercial electronic mail message which contains false or misleading information in the subject line. *See* RCW 19.190.030(1)(b).  A plaintiff who successfully alleges and proves such a violation may obtain, among other things, an injunction against the person who initiated the transmission. RCW 19.190.090(1). *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 728 n. 3 (2017) ("we note that a plaintiff may bring an action to enjoin any CEMA violation.").

35.    It is a violation of the consumer protection act, RCW 19.86 *et seq.*, to initiate the transmission or conspire with another person to initiate the transmission of a commercial electronic mail message that contains false or misleading information in the subject line.  RCW 19.190.030(1)(b). *See also* RCW 19.190.030(3) (providing "that the practices covered by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer

protection act, chapter 19.86 RCW. A violation of this chapter is not reasonable in relation to the development and preservation of business and is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act, chapter 19.86 RCW.").

36.    To establish a violation of Washington's CPA, a claimant must establish five elements: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that affects the public interest, (4) injury to plaintiff's business or property, and (5) causation. *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

37.    Washington and federal courts have held that a plaintiff states a CPA claim solely by alleging a violation of the CEMA. *See State v. Heckel*, 143 Wash.2d 824, 24 P.3d 404, 407 (2001) ("RCW 19.190.030 makes a violation of [CEMA] a per se violation of the [CPA].").

38.    Indeed, by alleging a CEMA violation of RCW 19.190.020, a plaintiff alleges all five elements of a CPA violation. *See Gordon v. Virtumundo, Inc.,* 575 F.3d 1040, 1065 (9th Cir. 2009) (citing *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wash.2d 778, 719 P.2d 531, 535-37 (1986)); *Wright,* 406 P.3d at 1155 ("We conclude that RCW 19.190.040 establishes the injury and causation elements of a CPA claim as a matter of law.").

## CLASS ALLEGATIONS

39.    **Class Definition.** Plaintiff brings this action pursuant to Washington Superior Court Civil Rule 23 on behalf of a Class of similarly situated individuals, defined as follows:

> All persons residing in Washington State who, within the applicable statute of limitations period, up to and including the date of final judgment in this action, received one or more commercial e-mails from FabFitFun stating or implying an offer of a "free" membership, gift, product, or service, that was only recoverable upon the recipient purchasing a subscription and/or product from Defendant.

40.    Excluded from the Class is: (1) Defendant and its current or former officers, directors, employees, and principals, as well as affiliated entities, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent have a controlling interest, (2) the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assignees of such persons or entities described herein; and (3) the Judge(s) assigned to this case and any members of their immediate families.

41.     Plaintiff reserves the right to amend the definition of the Class if discovery or further investigation reveals that the Class should be expanded or otherwise modified.

42.     **Numerosity.**  Members of the Class and Subclass are so numerous that joinder of all members is impracticable.  On information and belief, the Class is comprised of thousands of people who received commercial e-mails from Defendant throughout Washington that contained the misleading subject lines.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery, including through records maintained by Defendant and its agents.  Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant.

43.     **Commonality and Predominance.**  There is a well-defined community of interest and common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  Specifically, common legal and factual questions include, but are not limited to:

    a.  whether Defendant's "free" gift claim is false and misleading;

    b.  whether Defendant's e-mails are commercial e-mails as defined by the statute;

    c.  whether Defendant's conduct violated the statutes referenced herein;

    d.  Whether Defendant was aware that it was sending commercial e-mails to recipients in Washington state;

    e.  Whether Plaintiff and Class Members are entitled to damages and injunctive relief and in what amount.

44.     **Typicality.**  The claims of the named Plaintiff are typical of the claims of the Class Members in that Plaintiff and Class Members received commercial e-mails that were sent from Defendant containing false and misleading subject lines.

45.     **Adequacy.**  Plaintiff will fairly and adequately protect Class Members' interests. Plaintiff has no interests antagonistic to Class Members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class actions and consumer protection cases.

46.     **Superiority.**  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, *inter alia*, the following reasons: prosecutions of

individual actions are economically impractical for members of the Class; the Class is readily

definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs,

conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action

permits claims to be handled in an orderly and expeditious manner. Indeed, even if every Member

of the Class could afford to pursue individual litigation, the Court system could not. It would be

unduly burdensome to the courts in which individual litigation of numerous cases would proceed.

Individualized litigation would also present the potential for varying, inconsistent, or contradictory

judgments, and would magnify the delay and expense to all parties and the court system, resulting

in multiple trials of the same factual issues. By contrast, the maintenance of this action as a class

action, with respect to some or all of the issues presented herein, presents fewer management

difficulties, conserves the resources of the parties and of the court system and protects the right of

each Member of the Class. Plaintiff anticipates no difficulties in the management of this action as

a class action. Class-wide relief is essential to compel compliance with Washington law.

## CAUSES OF ACTION

### COUNT I
**Violation of Washington's Commercial Electronic Mail Act ("CEMA")**
**RCW 19.190, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

47.    Plaintiff hereby incorporates by reference each and every allegation as if fully set forth herein.

48.    Washington's CEMA prohibits any "person," as that term is defined in RCW 19.190.010(11), from initiating or conspiring to initiate the transmission of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that contains false or misleading information in the subject line.

49.    Defendant FabFitFun is a "person" within the meaning of RCW 19.190.010(11).

50.    Defendant knows, or has reason to know, that Plaintiff is a Washington resident.

51.    Defendant initiated the transmission or conspired to initiate the transmission of one or more commercial electronic mail messages to Plaintiff and Class Members with false or

---

misleading information in the subject line.

52.    Defendant's acts violate RCW 19.190.030(1)(b).

53.    Defendant's acts injured Plaintiffs and proposed Class members.

54.    The balance of the equities favors the entry of permanent injunctive relief against Defendant. Plaintiff, the members of the Class and the general public will be irreparably harmed absent the entry of permanent injunctive relief against Defendant. A permanent injunction against Defendant is in the public interest. Defendant's unlawful behavior is, based on information and belief, ongoing as of the date of the filing of this pleading; absent the entry of a permanent injunction, Defendant's unlawful behavior will not cease and, in the unlikely event that it voluntarily ceases, is likely to recur.

55.    Plaintiffs and Class members are therefore entitled to injunctive relief in the form of an order enjoining further violations of RCW 19.190.030(1)(b).

### COUNT II
**Violation of Washington's Consumer Protection Act ("CPA")**
**RCW § 19.86, *et seq*.**
**(On Behalf of Plaintiff and the Class)**

56.    Plaintiff hereby incorporates by reference each and every allegation as if fully set forth herein.

57.    Plaintiffs and Class members are "persons" within the meaning of the CPA, RCW 19.86.010(1).

58.    Defendant violated the CEMA by initiating or conspiring to initiate the transmission of a commercial electronic mail messages to Plaintiff and Class Members' that contain false or misleading information in the subject line.

59.    A violation of CEMA is a "per se" violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq*. *See* RCW 19.190.030(1).

60.    A violation of the CEMA establishes all five elements of Washington's Consumer Protection Act as a matter of law.

61.    Defendant's violations of the CEMA are unfair or deceptive acts or practices that occur in trade or commerce under the CPA. RCW 19.190.100.

62.     Defendant's unfair or deceptive acts or practices vitally affect the public interest and thus impacts the public interest for purposes of applying the CPA.  RCW 19.190.100.

63.     Pursuant to RCW 19.190.040(1), damages to each recipient of a commercial electronic mail message sent in violation of the CEMA are the greater of $500 for each such message or actual damages, which establishes the injury and causation elements of a CPA claim as a matter of law.  *Lyft, Inc.,* 406 P.3d at 1155.

64.     Defendant engaged in a pattern and practice of violating the CEMA.  As a result of Defendant's acts and omissions, Plaintiff and Class Members have sustained damages, including $500 in statutory damages, for each and every email that violates the CEMA.  The full amount of damages will be proven at trial.  Plaintiff and Class Members are entitled to recover actual damages and treble damages, together with reasonable attorneys' fees and costs, pursuant to RCW 19.86.090.

65.     Under the CPA, Plaintiff and Members of the Class are also entitled to, and do seek, injunctive relief prohibiting Defendant from violating the CPA in the future.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Members of the Class, seeks relief as follows:

a.     For an order certifying the Class under Wash. Sup. Ct. Civ. R. 23, naming Plaintiff as representatives of the Class, and appointing Plaintiff's attorneys as Class Counsel to represent the proposed Class;

b.     For an order declaring Defendant's conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d.     For statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For injunctive relief as pleaded or as the Court may deem proper; and

g.     For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: November 17, 2025          Respectfully submitted,

**CARSON NOEL PLLC**

By:     */s/ Wright A. Noel*

Wright A. Noel (State Bar No. 25264)
20 Sixth Avenue NE
Issaquah, WA 98027
Telephone: (425) 837-4717
Facsimile: (425) 837-5396
Email: wright@carsonnoel.com

**BURSOR & FISHER, P.A.**

L. Timothy Fisher (*pro hac vice forthcoming*)
Julia K. Venditti (*pro hac vice forthcoming*)
Joshua B. Glatt (*pro hac vice forthcoming*)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          jvenditti@bursor.com
          jglatt@bursosr.com

*Attorneys for Plaintiff and the Putative Class*