UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MELISSA WOYTKO,

               Plaintiff,

    v.

FABFITFUN, INC.,

               Defendant.

CASE NO. C25-2616JLR

ORDER

## I.   INTRODUCTION

Before the court is Defendant FabFitFun, Inc.'s ("FabFitFun") motion to compel arbitration.  (Mot. (Dkt. # 21); Reply (Dkt. # 27).)  Plaintiff Melissa Woytko opposes the motion.  (Resp. (Dkt. # 24).)  The court has considered the parties' submissions, the relevant portions of the record, and the governing law.  Being fully advised,[1] the court GRANTS FabFitFun's motion to compel arbitration.

---

[1] Neither party requested oral argument, and the court finds that oral argument would not assist it in deciding the motion.  (MTD; Resp); *see* Local Rules W.D. Wash. LCR 7(b)(4).

ORDER - 1

## II.   BACKGROUND

This putative class action arises from Ms. Woytko's allegations that FabFitFun violated the Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190, *et seq.*, and the Washington Consumer Protection Act ("CPA"), RCW 19.86.010, *et seq.*, by repeatedly sending emails with misleading or false subject lines to Washington consumers for the commercial purpose of marketing FabFitFun's products.  (Compl. (Dkt. # 1-1) ¶¶ 1, 4-5.)

**A.   Factual and Procedural Background**

FabFitFun is a direct-to-consumer retailer that sells subscription-based memberships to "seasonal, curated boxes containing cosmetics, clothing, wellness, and home products."  (*Id.* ¶ 11.)  FabFitFun regularly sends members advertisement e-mails that include subject lines offering free goods and gifts.  (*Id.* ¶ 15.)  The subject lines of these e-mails do not reveal the existence of any conditions or prerequisites that recipients must satisfy before being able to claim the free gifts.  (*Id.* ¶ 16.)  Instead, according to Ms. Woytko, the fact that the recipient must spend money on the FabFitFun platform or enter into a subscription contract to claim the free gift is "buried in the body of the e-mails."  (*Id.*)

On November 17, 2025, Ms. Woytko brought this action in Snohomish County Superior Court on behalf of herself and a putative class made up of "[a]ll persons residing in Washington State who, within the applicable statute of limitations period . . . received one or more commercial e-mails from FabFitFun" with an allegedly deceptive subject line regarding free gift offers.  (*See id.* ¶ 39; *see also* NOR (Dkt. # 1) ¶ 2.)  Ms. Woytko

ORDER - 2

raises claims against FabFitFun for violations of CEMA (Compl. ¶¶ 47-55) and the CPA (*id*. ¶¶ 56-65). She seeks class certification, statutory and/or punitive damages, prejudgment interest, and reasonable attorneys' fees and costs. (*Id*. at 14.)

On December 18, 2025, FabFitFun removed the action to this court. (*See generally* NOR.) On February 9, 2026, FabFitFun filed its motion to compel arbitration. (*See* Mot.) The motion is now fully briefed and ripe for decision.

**B.      Ms. Woytko's Account History and FabFitFun's Terms of Use and Sale**

FabFitFun contends that Ms. Woytko has had at least three FabFitFun membership accounts under different email addresses since 2018, and through the creation and reactivation of accounts has agreed to FabFitFun's Terms of Use and Sale at least five different times. (Davis Decl. (Dkt. # 23) ¶¶ 5-6.) FabFitFun asserts that "at all times" since Ms. Woytko first created a FabFitFun account in 2018, FabFitFun has notified users through a "notice on the checkout screen, that by completing their transaction, they would be agreeing to the Terms of Use and Sale and the Membership Terms." (Chouinard Decl. (Dkt. # 22) ¶ 12.) Ms. Woytko most recently created a new membership account on July 23, 2019, and reactivated that account on October 24, 2020. (Davis Decl. ¶ 7.) In July 2019 and October 2020, FabFitFun required customers seeking to open or reactivate an account to complete a one-page online checkout on FabFitFun's website which mandated clicking either the "ORDER THE BOX" button or "REACTIVATE ME" button. (Chouinard Decl. ¶¶ 6-9.) Ms. Woytko would not have been able to create a new membership account or reactivate her account unless she clicked on one of these action buttons. (*Id*. ¶ 9.)

ORDER - 3

In July 2019, the new-enrollment screen displayed a notice directly above the "ORDER THE BOX" button that stated: "By clicking 'Order the Box' you are agreeing to our Terms of Use and Sale and FabFitFun Box Membership Terms[.]" (*Id*. ¶ 10 (emphasis in original); *see also id*. ¶ 5, Ex. A (2019 Checkout Screen).) In October 2020, the account-reactivation screen displayed a notice directly above the "REACTIVATE ME" button that stated: "By clicking 'Reactivate Me'. . . You are also agreeing to abide by our Terms of Use and Sale and our Membership Terms." (*Id*. ¶ 11 (emphasis added); *see also id*. ¶ 6, Ex. B (2020 Checkout Screen).) The phrases were underlined and hyperlinked. (*Id*. ¶¶ 10-11.) If a user clicked either of the two hyperlinks, then their browser would open a new tab displaying the respective set of terms. (*Id*.) If a user hovered their cursor over the hyperlinks, then the hyperlink text would change color from black to orange. (*Id*.)

The Terms of Use and Sale that were in effect in October 2020 state:[2]

> BY ACCESSING OR USING ANY PART OF THE SITE OR SERVICES, YOU AGREE THAT YOU HAVE READ, UNDERSTOOD AND AGREED TO BE BOUND BY THESE TERMS, WHICH CONTAIN AN ARBITRATION AGREEMENT, A WAIVER OF CLASS-ACTION RIGHTS, AND LIABILITY LIMITATIONS. IF YOU DO NOT AGREE TO BE SO BOUND, YOU MAY NOT ACCESS OR USE THE SITES OR ANY SERVICES.

(*Id*. ¶ 14, Ex. D (2020 Terms of Use and Sale) at 1.) The arbitration provision provides:

> These Terms and each of its parts evidence a transaction involving interstate commerce, and the Federal Arbitration Act applies in all cases and governs

---

[2] Because the Terms of Use and Sale in effect in July 2019 and October 2020 contain materially similar arbitration clauses the court quotes only the latter in the interest of brevity. (*Compare id*., Ex. C, *with id.*, Ex. D.)

ORDER - 4

the interpretation and enforcement of the arbitration rules and arbitration proceedings. Any claims arising out of, relating to, or connected with these Terms must be asserted individually in binding arbitration administered by the American Arbitration Association ("AAA") in accordance with its Consumer Arbitration Rules (including, without limitation, utilizing desk, phone or video conference proceedings where appropriate and permitted to mitigate costs of travel). The arbitrator shall not conduct any form of class or collective arbitration nor join or consolidate claims by or for individuals. The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of these Terms, including, any claim that all or any part of these Terms is void or voidable or a particular claim is subject to arbitration. Judgment on the award rendered by the arbitrator may be entered in by any court of competent jurisdiction.

(*Id*. at 8.)

### III.   ANALYSIS

Below, the court sets forth the legal standard for motions to compel arbitration and then considers FabFitFun's motion.

### A.   Legal Standard

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, governs arbitration agreements in any contract affecting interstate commerce. *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). The FAA "reflect[s] both a liberal federal policy favoring arbitration . . . and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal quotation marks and citations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts . . . and must enforce them according to their terms[.]" *Id*. (citations omitted); *see also Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).

ORDER - 5

Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable" unless invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability.  9 U.S.C. § 2; *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1259 (9th Cir. 2017).  Arbitration agreements may not, however, be invalidated by defenses that apply only in arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.  *Poublon*, 846 F.3d at 1260.  The party opposing arbitration bears the burden of showing that the agreement is not enforceable.  *See Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 (2000).

A district court's authority to compel arbitration arises under Section 4 of the FAA.  *In re Van Dusen*, 654 F.3d 838, 843 (9th Cir. 2011); 9 U.S.C. § 4.  In deciding whether to compel arbitration under the FAA, a court's inquiry is generally limited to two "gateway" issues: "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted).  If both conditions are met, "the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms."  *Id*.  "However, these gateway issues can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide [for it].'"  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (emphasis omitted) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).  If an agreement contains a delegation provision, the court's role is limited to analyzing whether: (1) a valid agreement to arbitrate exists and (2) the agreement contains a valid delegation provision.  *Id*. at 1133.  If both preconditions are met, the arbitrator must

ORDER - 6

resolve all further issues regarding arbitrability, including whether the arbitration agreement applies to the dispute at issue.  *Id*.

**B.      Motion to Compel Arbitration**

FabFitFun asks the court to compel arbitration pursuant to the arbitration agreement in the Terms of Use and Sale and stay the case pending the completion of arbitration.  (Mot. at 6.)  Ms. Woytko asserts that no enforceable arbitration agreement exists because FabFitFun's 2019 enrollment screen and 2020 reactivation screen did not provide reasonably conspicuous notice of the existence of the arbitration agreement, and she never provided unambiguous manifest assent.  (Resp. at 2-21.)

        1.      Reasonably Conspicuous Notice

As the party seeking to compel arbitration, FabFitFun bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *See Norcia v. Samsung Telecommunications Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc*., 771 F.3d 559, 565 (9th Cir. 2014) (internal quotation marks omitted)).  "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."  *Id*. (quoting *AT & T Techs., Inc*., 475 U.S. at 648).

The court applies "ordinary state-law principles that govern the formation of contracts" to decide whether an agreement to arbitrate exists.  *See id*. (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).  The parties agree that Washington law governs the issue of contract formation.  (Mot. at 6-7; Resp. at 2.)  Under Washington law, to form a valid contract, the contracting parties must "objectively

ORDER - 7

manifest their mutual assent." *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash. 2004). "Generally, manifestations of mutual assent will be expressed by an offer and acceptance." *Id.* (citation omitted). Acceptance may be manifested expressly, such as by checking a box or clicking on a button, or impliedly, through performance or other conduct. *See Okelo v. Antioch Univ.*, 601 F. Supp. 3d 894, 897-98 (W.D. Wash. 2022) (finding that arbitration agreement was valid where offer letter provided link to access full text of arbitration agreement and other policies, and employee accepted when he signed and returned offer letter); *see also Am. Exp. Centurion Bank v. Stratman*, 292 P.3d 128, 132 (Wash. Ct. App. 2012) (noting that acceptance of an offer may be made through conduct).

The parties disagree as to whether FabFitFun provided Ms. Woytko reasonable notice of its Terms of Use and Sale through the 2019 and 2020 checkout interfaces and whether Ms. Woytko manifested her assent to those terms.[3] (*See generally* Mot.; Resp.) Ms. Woytko argues that FabFitFun's 2019 enrollment screen and 2020 reactivation screen constitute a hybrid sign-in wrap agreement that did not give reasonably conspicuous notice of the terms because the Terms of Use and Sale hyperlinks were not in a contrasting color, capital letters, or an eye-catching font or size, and were not accompanied by design elements drawing the eye to the hyperlinks. (Resp. at 2-18.)

---

[3] The court need not address Ms. Woytko's argument that FabFitFun fails to provide any evidence that the 2018 terms are binding because Ms. Woytko made another account in 2019 which she reactivated in October 2020. (Resp. at 2-3.) Thus, the court concludes that the 2018 terms are irrelevant to the issues in FabFitFun's motion.

ORDER - 8

"In the world of internet contracts, there are browsewrap, clickwrap, scrollwrap, and sign-in wrap agreements, each of which purport to bind users through different 'assent' mechanisms." *Chabolla v. ClassPass Inc*., 129 F.4th 1147, 1154 (9th Cir. 2025) (citation omitted). Courts routinely enforce clickwrap and scrollwrap agreements and decline to enforce browsewrap agreements. *See id*. (citation omitted). "[A] sign-in wrap lives somewhere in the middle: the website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms." *Id.* (citation omitted). Ms. Woytko contends, and FabFitFun does not contest, that the type of internet contract at issue here is a sign-in wrap or hybridwrap agreement. (*See* Resp. at 1, 4; Mot. at 7.)

"[A] sign-in wrap agreement may be an enforceable contract based on inquiry notice if (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Chabolla*, 129 F.4th at 1154 (internal quotation marks and citation omitted). To be conspicuous, notice "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent [i]nternet user would have seen it." *Keebaugh v. Warner Bros. Ent. Inc*., 100 F.4th 1005, 1014 (9th Cir. 2024) (internal quotation marks and citation omitted). "The 'context of the transaction,' as well as the 'traditional inquiry related to the visuals involved with the notice, such as font size, text placement, and overall screen design,' inform whether a website provides reasonably conspicuous notice of the terms of an agreement." *Chabolla*, 129 F.4th at 1155 (citation omitted).

ORDER - 9

The court concludes that Ms. Woytko was provided reasonably conspicuous notice of the Terms of Use and Sale through FabFitFun's 2019 enrollment page and 2020 reactivation page. As the Ninth Circuit held in *Chabolla*, there is no bright-line rule that a website's hyperlinked terms of service must be set apart in blue, bolded, and underlined font. *Chabolla*, 129 F.4th at 1157; *see also Keebaugh*, 100 F.4th at 1021 (requiring only "a contrasting font color" to make notice legible against a given background). The 2019 enrollment screen is one page long, displays the "Terms of Use and Sale" and "FabFitFun Box Membership Terms" hyperlinks in underlined and bolded font; and places the "ORDER THE BOX" button directly below a statement that the user agrees to the Terms of Use and Sale by clicking the button. (*See* 2019 Checkout Screen.) The bolded hyperlinks are distinguished from the surrounding text and light gray background, and other elements on the screen do not obscure the textual notice. (*Id.*) Thus, the court "fairly assume[s] that a reasonably prudent [i]nternet user would have seen" the notice of the Terms of Use and Sale. *See Keebaugh*, 100 F.4th at 1014 (citation omitted). The 2020 reactivation screen also has the hyperlinks underlined, in a lighter gray color that is noticeable against the white background, and directly above the action button. (*See* 2020 Checkout Screen.)

Furthermore, the fact that Ms. Woytko reactivated her account indicates that she had already encountered the 2019 enrollment screen. "The nature of an agreement may anticipate 'some sort of continuing relationship . . . that would require some terms and conditions' . . . even if not explicitly told." *See Chabolla*, 129 F.4th at 1155 (citation omitted); *see also Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 518 (9th Cir. 2023)

ORDER - 10

(concluding that users who make an account with a ticket purchasing website through a "full registration process" should expect "'some sort of continuing relationship' that would have put users on notice for a link to the terms of that continuing relationship"). Ms. Woytko's creation of her account and reactivation of that account demonstrate "some sort of continuing relationship . . . that would require some terms and conditions." *See Oberstein*, 60 F.4th at 518. Additionally, the court is not convinced by Ms. Woytko's argument that "an annual subscription is simply a one-time purchase." (Resp. at 20.) Although the purchase may have occurred just once, four deliveries over the course of the year denotes a continuing relationship.

As a whole, considering both the visual and contextual indicators of the 2019 enrollment screen and 2020 reactivation screen, the court concludes that FabFitFun provided reasonably conspicuous notice of the Terms of Use and Sale.

2.      Unambiguous Manifest Assent

Because the court concludes that FabFitFun provided reasonably conspicuous notice of the Terms of Use and Sale, to show Ms. Woytko manifested assent, FabFitFun need only show that she "[took] some action, such as clicking a button or checking a box, that unambiguously manifests [] her assent to those terms[.]" *Keebaugh*, 100 F.4th at 1014 (citation omitted); *see also Oberstein*, 60 F.4th at 515 ("The second part of the test—whether the user takes some action that unambiguously manifests assent—is relatively straightforward.").

Here, there is no dispute that Ms. Woytko clicked a button after being presented with hyperlinks to the Terms of Use and Sale and the Membership Terms. (*See* Mot.;

Resp.)  On the 2019 enrollment screen, she clicked the "ORDER THE BOX" button, and on the 2020 reactivation screen she clicked "REACTIVATE ME."  (*See* 2019 Checkout Screen; 2020 Checkout Screen.)  Thus, the court concludes that FabFitFun has shown that the arbitration agreement included in its Terms of Use and Sale is valid.

> 3.      Delegation to the Arbitrator

Finally, whether the court or an arbitrator should resolve a dispute as to arbitrability depends upon whether the parties agreed to delegate that power to the arbitrator.  *Brennan*, 796 F.3d at 1125.  Unless the parties "clearly and unmistakably" delegate that power to an arbitrator, arbitrability is for the court, not the arbitrator, to decide.  *First Options*, 514 U.S. at 944; *AT & T Techs.*, 475 U.S. at 649.  The Ninth Circuit has held that an arbitration agreement "clearly and unmistakably" delegates the gateway issues of arbitrability to an arbitrator when it incorporates by reference the American Arbitration Association's ("AAA") rules of arbitration.  *Brennan*, 796 F.3d at 1130.

Here, it is clear that the arbitration provision of the Terms of Use and Sale delegates the arbitrability question to an arbitrator.  Not only does the arbitration provision incorporate the AAA rules, but it also expressly states that the arbitrator has exclusive authority to resolve disputes about the "interpretation, applicability, enforceability, or formation" of the Terms of Use and Sale, including whether "a particular claim is subject to arbitration."  (2020 Terms of Use and Sale at 8.)  Therefore, the court concludes that the parties have delegated to the arbitrator the issue of whether Ms. Woytko's claims are arbitrable, and the court's analysis ends here.

ORDER - 12

*Brennan*, 796 F.3d at 1133 (limiting the court to determining whether a valid agreement to arbitrate exists and whether the agreement contains a valid delegation provision). Accordingly, the court grants FabFitFun's motion to compel arbitration and stays this action pending the completion of arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 478-79 (2024).

## IV.    CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to compel arbitration (Dkt. # 21) and STAYS this action pending the completion of arbitration.

Dated this <u>11th</u> day of May, 2026.

_____
JAMES L. ROBART
United States District Judge

ORDER - 13